IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RICHARD ANTHONY VIGIL,**

    Plaintiff,

v.                                                                                                                                       No. 16-cv-0436 SMV

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 24] ("Motion"), filed on November 18, 2016. The Commissioner responded on February 16, 2017. [Doc. 28]. Plaintiff replied on March 1, 2017. [Doc. 29]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 20]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet his burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that his decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on February 23, 2012. Tr. 11. He alleged a disability-onset date of May 8, 2005. *Id.* His claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ John W. Rolph held a hearing on July 18, 2014, in Albuquerque, New Mexico. *Id.*, Tr. 37−70. Plaintiff appeared by videoconference from El Paso, Texas and was represented by an attorney. Tr. 11, 37–70. The ALJ heard testimony from Plaintiff and an impartial vocational expert, Judith Beard. Tr. 11, 42–69.

The ALJ issued his unfavorable decision on October 9, 2014. Tr. 30. He found that Plaintiff met the insured status requirements through March 31, 2008. Tr. 13. At step one he found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that Plaintiff suffered from the following severe impairments: "Degenerative Disc Disease/Degenerative Joint Disease of the Lumbar and Cervical Spines with Sacroiliac Joint Dysfunction, Spondylosis, and Chronic Pain/Radiculopathy; and Pain Disorder due to General Medical Condition." Tr. 13. Further he found that the following medically determinable impairments, considered individually and in combination, were not severe at step two:

> Tobacco Use Disorder; COPD; History of Hepatitis C; Testicular Dysfunction/Hypofunction; Dental Problems; Dysphagia; Status Post Biopsy of Right Ear Canal and Tongue Lesion; Anemia; Vitamin D Deficiency; Anemia [sic]; Mild Esophageal Dysmotility/Dysfunction; Small Hiatus Hernia with Mild Reflux; Anemia [sic]; Upper Respiratory Infection; Status Post Ludwig's

> Angina; Dehydration; and Neck and Oral Abscesses, as well as . . . Marijuana Abuse and Alcohol Abuse.

Tr. 14.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 14–17. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 17–29. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that [he] can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; [Plaintiff] can stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday; and [Plaintiff] can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Additionally, [Plaintiff] must avoid more than occasional exposure to extreme cold; vibration; irritants such as fumes, odors, dust, gases, and chemicals; as well as poorly ventilated spaces; and [he] must also avoid hazards such as dangerous machinery and unprotected heights. Furthermore, as a result of his mental impairment, [Plaintiff] is fully capable of learning, remembering, and performing simple, detailed[,] and complex work tasks and he can maintain concentration, persistence, and pace for 3 hours at a time with normal breaks.

Tr. 17. At step four the ALJ found that Plaintiff was able to return to his past relevant work as a customer service representative. Tr. 29–30. Therefore, the ALJ did not proceed to step five. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claims. Tr. 30. The Appeals Council denied Plaintiff's request for review on April 11, 2016. Tr. 1–3. Plaintiff timely filed the instant action on May 12, 2016. [Doc. 1].

## Analysis

Plaintiff fails to show reversible error in the ALJ's assessment of his RFC. While he cites evidence that could support a more restrictive RFC, he fails to show that the RFC is not supported by substantial evidence or was the product of an incorrect legal standard. Similarly, Plaintiff fails to show reversible error in the ALJ's step-four findings regarding Plaintiff's past relevant work.

### Plaintiff fails to show reversible error in the RFC assessment.

Plaintiff attacks the RFC assessment in six ways, but none is persuasive. (1) He fails to show that the ALJ erred in determining that he could sit for six hours out of an eight-hour day. (2) He fails to show that the ALJ incorrectly evaluated Dr. Flores's opinion that Plaintiff would not be able to work in the near future. (3) Plaintiff fails to show reversible error in the RFC's limitation to light work and the categorization of his past job as sedentary. (4) Similarly, Plaintiff fails to show reversible error in the ALJ's finding that he could perform "simple, detailed[,] and complex work tasks." (5) Plaintiff fails to show reversible error in the evaluation of his fatigue and memory problems. (6) Plaintiff fails to show reversible error in the ALJ's evaluation of his credibility.

First, Plaintiff argues that the ALJ erred in finding that, despite his back problems, he could sit for six hours out of an eight-hour day. Plaintiff cites to several portions of the record that could support a more restrictive sitting limitation. [Doc. 24] at 7–12; [Doc. 29] at 1–4. The ALJ agreed that Plaintiff suffered from several severe impairments related to his back (i.e., degenerative disc disease/degenerative joint disease of the lumbar and cervical spines with

sacroiliac joint dysfunction, spondylosis, and chronic pain/radiculopathy; and pain disorder). Tr. 14–15. There is no dispute that Plaintiff's back problems "significantly limit[ his] ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). The dispute here is about the extent of the limitations. The ALJ found that, as a result of all his impairments together, Plaintiff was limited to light work including sitting for six hours out of an eight-hour day (and several environmental limitations). Tr. 17. Plaintiff challenges the RFC assessment as not restrictive enough to account for his difficulty sitting. The Court is not persuaded.

Even if the record evidence were sufficient to support a more restrictive sitting limitation, reversal would not be warranted. This Court lacks the authority to re-weigh the evidence. The standard here is whether the ALJ's findings are supported by substantial evidence—not whether substantial evidence could support some other finding. Dr. Kando and Dr. Vohries both opined that Plaintiff could sit for six hours out of an eight-hour day. Tr. 83, 98, 115, 132. These opinions constitute substantial evidence to support the sitting limitation found by the ALJ.

Dr. Velasquez's opinion does not change the result. Her opinion does not contradict Dr. Kando's and Dr. Vohries's opinions. Dr. Velasquez indicated that "[t]here may be limitations in the functional areas of *sitting*, walking, lifting, and carrying . . ." Tr. 547 (emphasis added). She went on to estimate that Plaintiff's walking/standing would be limited to six hours out of an eight hour day and his lifting/carrying would be limited to 20 pounds on occasion. *Id.* She did not offer any specific limitation for sitting. *See id.* Plaintiff suggests that the ALJ "could have" re-contacted Dr. Velasquez to ask her for a specific sitting limitation. [Doc. 29] at 3. However, Plaintiff does not argue that the ALJ was required to do so. *See id.*

Having carefully considered the evidence cited by Plaintiff, [Doc. 24] at 7–12; [Doc. 29] at 1–4, the Court finds that he fails to show that the sitting limitation assessed by the ALJ should be reversed.

Second, the Court is not persuaded that the ALJ erred in evaluating Dr. Flores's opinion. In a medical record dated January 3, 2012, Plaintiff's primary care physician, Dr. Flores, noted that Plaintiff "[r]emains on disability due to pain and impairment from medication. Not likely he will be able to become fully employed in the near future." Tr. 509. Plaintiff argues that the ALJ "failed to consider" the statement that Plaintiff could not work in the near future. [Doc. 24] at 12–13; *see* [Doc. 29] at 3–4 (Plaintiff's complaining that the ALJ failed to "assess or discuss" the statement). The Court does not agree. The ALJ, in fact, did consider Dr. Flores's statement. The ALJ stated that he had "consider[ed] the entire record," Tr. 14, and the Court takes him at his word, *see Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). Further, the ALJ explicitly discussed this very statement. He noted:

> Dr. Flores had been [h]is doctor for at least the last 5 to 6 years. *In January 2012, Dr. Flores told him that he would not likely be employed in the near future*, but he was the doctor who said that his pain was under control and the one who still gives him his medications.

Tr. 18 (emphasis added). To the extent that Plaintiff implies that the ALJ was required to apply the familiar treating physician analysis[4] to this statement, the Court disagrees.

---

[4] Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as

Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (internal quotation marks omitted). Consequently, an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, *id.*, and such an opinion is never entitled to controlling weight or special significance, *see* Social Security Ruling ("SSR") 96-5p, 1996 SSR LEXIS 2, at *14–15, 1996 WL 374183, at *1, 2, 5.

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 SSR LEXIS 2 at *6, 1996 WL 374183, at *3; *see also id.*, 1996 SSR LEXIS 2

---

consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Treating physician opinions—in order to receive controlling weight—must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

at *17, 1996 WL 374183, at *1 (stating that a social security decision "must explain the consideration given to a treating source's opinion(s)" on an issue reserved to the Commissioner).

Given this framework, Dr. Flores's opinion that Plaintiff was "[n]ot likely . . . able to become fully employed in the near future," was not a "medical opinion" but, instead, was an opinion "on [an] issue[] reserved to the Commissioner." *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, the opinion was not entitled to controlling weight or any special significance, and the ALJ was not required to evaluate it under the treating physician rule. Instead, under SSR 96-5p, the ALJ was required to evaluate all the evidence in the case record to determine the extent to which the opinion was supported by the record. He did so. Tr. 18, *see* Tr. 17–29. Plaintiff fails to meet his burden before this Court to show that anything more was required.

Third, Plaintiff argues that "[t]he ALJ's finding of an ability to perform light work, yet his denial of benefits based on an ability to perform a sedentary job, makes the RFC finding suspect, and was error requiring remand." [Doc. 24] at 15. Plaintiff fails to develop this argument sufficiently. He points to the Medical Vocational Guidelines ("Grid Rules") and argues that if his RFC had been more restrictive, he would have been disabled under certain Grid Rules. *Id.* To that point, the Court follows. However, the Court fails to see how the RFC assessment's limitation to light work and the categorization of Plaintiff's past customer service work as sedentary somehow renders the RFC "suspect."

Fourth, Plaintiff argues that the RFC is "internally inconsistent[.]" [Doc. 24] at 16; [Doc. 29] at 4. The ALJ found that Plaintiff was "fully capable of learning, remembering, and

performing simple, detailed[,] and complex work tasks and he can maintain concentration, persistence, and pace for 3 hours at a time with normal breaks." Tr. 17. Plaintiff is correct that a limitation to simple tasks would be inconsistent with the ability to perform detailed or complex tasks. *See generally* SSR 83-10 (describing unskilled, semi-skilled, and skilled work in terms of "simple" and "complex" tasks). The problem is that the ALJ did not limit Plaintiff to simple tasks. Tr. 17. The RFC is not internally inconsistent. It may have been superfluous to say that Plaintiff can perform simple tasks when he can also perform detailed, complex tasks because the ability to perform simple tasks is encompassed by the ability to do detailed and complex tasks. But it is not inconsistent. More to the point, though, there is substantial evidence to support the ALJ's finding that Plaintiff can perform detailed and complex tasks. Tr. 543 (Dr. Michel's psychiatric evaluation).[5] Plaintiff fails to show reversible error.

Fifth, Plaintiff fails to show reversible error in the evaluation of his fatigue and memory problems. He argues that the medical evidence shows that his pain caused non-exertional limitations that are not accounted for in the RFC. [Doc. 24] at 16–18 (citing to records regarding Plaintiff's memory complaints, mouth ulcers, which caused trouble eating and significant weight loss, anemia, hepatitis C, chronic obstructive pulmonary disease ("COPD"), and pain disorder);

---

[5] Specifically, Dr. Michel opined:

> As previously mentioned, Mr. Vigil does not seem to suffer of mental disabilities that may have been the result of his physical limitations. He may have a tendency for narcissistic thinking but it does not seem to be to the point of being considered a personality disorder.
> *He does not seem to have any problems following simple and complex instructions*; he does not seem to have serious difficulties getting along with coworkers, the public and supervisors. However, when he comes to perform relatively heavy tasks, he doesn't seem to have the ability due to pain and low energy that could be the result of a chronic viral infection (hepatitis).

Tr. 543 (emphasis added).

[Doc. 29] at 4. The ALJ considered this evidence. Tr. 14 (stating that he had "consider[ed] the entire record"). He also explicitly discussed it. Tr. 16, 18 (memory), 14, 18, 19, 21, 22 (mouth ulcers, which caused trouble eating and significant weight loss), 14 (anemia), 14, 20 (hepatitis C), 14, 16, 22 (COPD), and 23–24 (pain disorder). Even if this record evidence were sufficient to support more restrictive non-exertional limitations, reversal would not be warranted. This Court lacks the authority to re-weigh the evidence. The standard here is whether the ALJ's findings are supported by substantial evidence—not whether substantial evidence could support some other finding. Having carefully considered the evidence cited by Plaintiff, [Doc. 24] at 16−18; [Doc. 29] at 4, the Court finds that he fails to show that the RFC assessed by the ALJ should be reversed.

Plaintiff's final challenge to the RFC assessment is aimed at the ALJ's credibility analysis. [Doc. 24] at 20–23. SSR 96-7p requires ALJs to "make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. . . . It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" 1996 SSR LEXIS 4, at *2–3 (emphasis added).[6] Specifically, in evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163

---

[6] SSR 96-7p was superseded on March 29, 2016 (after the Commissioner's decision became final and after the action was already pending in this Court), by SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 SSR LEXIS 4, at *1, 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). The new Ruling, however, does not appear to be a policy change but, rather, a clarification. As to the issues raised in this appeal, the Court sees no material difference between the Rulings. The Court's analysis of Plaintiff's argument is the same under either Ruling. Thus, the rescission of SSR 96-7p and issuance of SSR 16-3, alone, does not warrant remand.

(10th Cir. 1987). First, accepting the subjective allegations as true, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged [symptoms]." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's [symptoms are] in fact disabling." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. The ALJ must consider "the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity" in determining whether the ALJ believes the claimant. *Luna*, 834 F.2d at 163. That is, the ALJ must assess the credibility of the claimant's assertions of pain or other symptoms. *Id.*

The district court cannot re-weigh the evidence. It can only review an ALJ's decision to ensure that he applied the correct legal standard and that his findings were supported by substantial evidence. *Clifton*, 79 F.3d at 1009. "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs need not discuss "every piece of evidence," *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" Tr. 26. The ALJ gave around a dozen reasons for his finding. Tr. 26–28. Some examples of his reasons follow. He found that Plaintiff's lack of treatment between April 2012 and July 2013 tended to show that Plaintiff's symptoms were not as severe as he claimed because if they had been that severe, Plaintiff would have sought treatment. *Id.* The ALJ also pointed to the frequency of Plaintiff's appointments with Dr. Flores, which were once every three months. The ALJ reasoned that if Plaintiff's symptoms were as severe as he claimed, he would have been seeing Dr. Flores more frequently. *Id.* The ALJ pointed to Plaintiff's reports of walking two miles to the gym, practicing Tai Chi, and performing exercises at home. *Id.* He found that Plaintiff's pain was well-controlled by medication. *Id.* He noted that Plaintiff had given inconsistent reports to Dr. Michel and Dr. Velasquez regarding his household chores and driving. Tr. at 27. He found that Plaintiff's part-time work as a bartender tended to show that his symptoms were not as severe as he claimed. Tr. 27–28. The ALJ also pointed to Plaintiff's earnings records for the 15 years preceding the alleged onset date. Tr. 28. He found that Plaintiff's earnings were consistently very low (i.e., usually less than $5,000 per year), which tended to show that Plaintiff "lacked the interest or motivation [to work] on a sustained and regular basis." *Id.*

Plaintiff argues that the "factors [the ALJ] relied on . . . were not sufficient to overcome the evidence of pain and limitations." [Doc. 24] at 20. He cites to evidence that he argues would support a more favorable credibility finding. For example, he has long-term reports of pain in

14

the low back, hips, and legs as well as fatigue and pain disorder. *Id.* His complaints of pain have been persistent over time. *Id.* at 23. And Dr. Flores and Dr. Velasquez affirmatively found that he did not malinger or exaggerate his symptoms. *Id.* at 23.

Plaintiff attacks some of the reasons given by the ALJ to support his credibility finding. [Doc. 24] at 26–28. However, he does not argue that the reasons are unsupported by the record. Rather, he argues that the ALJ should have interpreted the evidence more favorably to him. *Id.* For example, Plaintiff argues that the lack of treatment in 2012 and 2013 should not cut against him because the ALJ did not ask him about it at the hearing. Plaintiff does not explain what he might have said to explain the gap; he simply urges that it should not undermine his testimony. *Id.* at 23. He does not disagree that he saw Dr. Flores once every three months. *Id.* at 21. Instead, he argues that the frequency of his appointments do not diminish his credibility. *Id.* Similarly, Plaintiff argues that his two-mile walks to the gym should weigh in his favor because such walks are far less than the six hours of walking/standing assessed in the RFC. *Id.* Finally, Plaintiff argues that his statements to Dr. Michel and Dr. Velasquez about whether he was working were not inconsistent but, rather, were a misunderstanding. He told them he had not worked since 2005, and it is true that he had not worked *full time* since 2005. *Id.* at 21–22.

Although this Court might have reached a different conclusion than the ALJ, the evidence may not be re-weighed. The ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Plaintiff fails to show reversible error in the ALJ's assessment of his credibility.

### Plaintiff fails to show reversible error related to his past work.

Plaintiff offers two challenges to the ALJ's findings at step four. First, he argues that the step-four findings must be reversed because they are premised on an incorrect RFC. [Doc. 24] at 18–19; [Doc. 29] at 5. However, the Court has rejected Plaintiff's challenges to the RFC. Accordingly, his challenges to the RFC as applied at step four are also rejected.

Second, Plaintiff complains that the ALJ's comparison of the RFC with the physical and mental demands of Plaintiff's past work as a customer service representative occurred in the ALJ's head, and thus, Plaintiff cannot challenge it. [Doc. 24] at 18–19 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). Plaintiff argues that his past work was troubleshooting for internet TV customers in 2001. *Id.* at 19. He asks the Court to take judicial notice that "the computer and internet arena is one where the skills and abilities of a worker would change dramatically in 13 year[s], from 2001 to 2014." *Id.* He goes on to argue that "[t]he fact that [Plaintiff]'s past work was in the field of computers and the internet highlights the importance of the ALJ['s] making a specific finding regarding the duties required of the past work, and [Plaintiff]'s current abilities." *Id.* (citing *Bier v. Colvin*, 15 F. Supp. 3d 1143 (D.N.M. 2014)).

This line of thinking seems to conflate two separate issues, neither of which warrants remand. The first is that at step four, an ALJ must make specific findings regarding the mental and physical demands of the plaintiff's past work. *Winfrey*, 92 F.3d at 1023. This finding matters so that the ALJ can sufficiently compare the demands of the plaintiff's past work with his current capabilities (i.e., his RFC). Of course, if the RFC is not consistent with the demands of the plaintiff's past work, he cannot return to it. *See id.* Here, however, Plaintiff does not

16

suggest that some requirement of his past work troubleshooting internet TV is inconsistent with his RFC. Instead, he suggests that the skills he had 13 years ago to perform the job are now obsolete. That argument is not sufficiently developed for review. *Winfrey* and *Bier* do not address the obsolescence of skills. The Court cannot research the issue for Plaintiff. Under *Winfrey* and *Bier*, Plaintiff fails to show reversible error at step four.

## Conclusion

Plaintiff fails to show that substantial evidence does not support the ALJ's findings. He also fails to show that the ALJ failed to apply the correct legal standards. Accordingly, remand is not appropriate.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 24] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**